In re H.B. MICHELSON, dba Michelson Sod Farms, Debtor.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS, Plaintiff,

and

Western Farm Credit Bank and John I. Haas, Inc., Intervenors,

v.

H.B. MICHELSON, dba Michelson Sod Farms, Defendant.

Bankruptcy No. 290–00735–C–11.
Adv. No. 91–2271.

United States Bankruptcy Court, E.D. California.

June 30, 1992.

Robert Bardwil, Bardwil & Dahl, Sacramento, Cal., for plaintiff Official Committee of Unsecured Creditors.

Julia Gibbs, El Dorado Hills, Cal., for defendant H.B. Michelson.[1]

Laura S. Taylor, Sheppard, Mullin, Richter & Hampton, San Diego, Cal., for intervenor Western Farm Credit Bank.

Michael S. McManus, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for intervenor John I. Haas, Inc.

## OPINION ON MOTION FOR SUMMARY JUDGMENT

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

■ Among the rocks and shoals of post-confirmation matters is the poorly charted question whether materially defective disclosure used in connection with obtaining confirmation of a plan of reorganization constitutes a fraud that permits revocation of the confirmation order under 11 U.S.C. § 1144.[2] It does. Moreover, involvement by an officer of the court in materially defective disclosure makes the fraud a fraud on the court. Revoking the order of confirmation does not require proof that the fraud have caused specific economic loss. It is harm enough that the fraud was material to confirmation and to the terms of the confirmed plan.

The debtor failed to disclose the federal mail fraud indictment of Raymond Whitehead, who was touted in the disclosure statement and at the confirmation hearing as a key manager and turnaround specialist who would implement the debtor's plan of reorganization. And, in extolling Whitehead's skills as a financial manager, the debtor omitted mention of the chapter 7 bankruptcy of the company that Whitehead was said to have built into a $5 million per year operation—a case in which the debtor's counsel also represented Whitehead's company.

The creditor's committee learned of these matters within 180 days after confirmation and filed this adversary proceeding. The debtor defended on the theory that the confirmation should stand because no specific economic harm could be traced directly to Whitehead. Other persons who acquired rights under the order of confirmation intervened as plaintiffs. Summary judgment is now sought against the defendant.

### I. Summary Judgment Facts

There is no genuine issue of material fact. The following facts, assessed according to familiar rules that take facts in the light favorable to the party opposing the motion, are not seriously in dispute.

The debtor, H.B. Michelson, did business as Michelson Sod Farms ("MSF"). He filed a chapter 11 case on February 2, 1990, and filed his first plan of reorganization and disclosure statement on August 31, 1990.

According to the disclosure statement, in January 1990 the debtor employed Raymond Whitehead as a workout consultant, and, after confirmation of a plan of reorga-

---

1. This counsel substituted in for defendant after this motion was fully briefed and is *not* the counsel whose actions are described in this opinion.

2. That section is entitled "Revocation of an order of confirmation" and provides:

   On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall

   · · · · ·

   (1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and
   (2) revoke the discharge of the debtor.
   11 U.S.C. § 1144.

nization, would continue to employ him as a turnaround specialist for at least five years. Whitehead would manage MSF's finances, streamline operations, and guide the business back into profitability.[3] In the event Michelson became unable to manage MSF for any reason, Whitehead would also oversee MSF's day-to-day operations.

The disclosure statement included an exhibit summarizing Whitehead's background. Among his stated qualifications was the founding of an aerospace manufacturing company, Wilderness Electronics, Inc. ("WEI"), the gross annual revenues of which reportedly grew in less than 10 years to $5 million.[4]

On October 23, 1990, Western Farm Credit Bank objected that the "terse" description of Whitehead's qualifications in the disclosure statement did not provide enough information to enable creditors to evaluate the desirability of Whitehead's proposed services. This objection was never withdrawn. Other objections were made by the committee of unsecured creditors. In response to the objections, the debtor twice amended his plan and disclosure statement and also made several modifications. The disclosure statement was approved on January 10, 1991.[5]

On January 29, 1991, Whitehead testified at the confirmation hearing regarding his proposed role during the ensuing five years.[6] So did the debtor.[7] The order confirming the plan, after approvals as to form by counsel, was entered February 21, 1991.

On April 27, 1990, Whitehead was indicted by a federal grand jury in this judicial district on twenty-eight counts of mail

---

3. Mr. Whitehead's proposed compensation under the plan ranged from $4,000 per month in 1990 to $5,400 per month in 1996.

4. The attachment to the disclosure statement stated that from 1979–87 Whitehead was a "Business Owner," in which capacity he "[f]ounded aero-space manufacturing company and grew company to gross revenue exceeding $5 million annually."

5. The Disclosure Statement to the Second Modification to the Second Amended Plan, filed November 26, 1990, was supported by a declaration in which Whitehead described the plan, including the means for its execution, projected increases in production of sod, price increases, quality improvement, marketing plans for wholesale and retail markets, cost of delivery, a liquidation analysis, and the treatment of claims. Whitehead Declaration at ¶¶ 6–37. Michelson averred that Whitehead prepared the financial projections. Michelson Declaration at ¶ 7.

6. Whitehead testified as follows in response to questions from Michelson's counsel:

Q. Following confirmation of the plan, what position or positions will you hold with Michelson Sod Farms?
A. I will continue on in the same capacities that I am now: The cost controller, sales manager and assistant general manager.

Q. What will your duties include?
A. From a controller standpoint, they will, as they have, include the preparation of budgetary figures to the implementation and continued enactment of costs, accounting princi-

ples to the company's accounting, the preparation of annual budgets, the participation in operations on the—a monthly basis from a sales managing standpoint, strategic planning and implementation of the company's interest to penetrate its new markets. When I say "new markets," I mean the shifting of its current overseeing of the operation of the company as a whole.
Q. To ensure continuity of management, is there any understanding as to how long you will be retained by Michelson Sod Farm?
A. Yes, there is.
Q. What is that understanding?
A. Approximately five years.

Q. Are there any plans should Mr. Michelson become unable to manage Michelson Sod Farms?
A. Yes, there are.
Q. What are those plans?
A. I would assume the general manager's position of the company.
Transcript at 24–26.

7. Mr. Michelson testified as follows in response to questions from his counsel:

Q. And Michelson Sod Farms will continue to retain Mr. Whitehead as a consultant?
A. Yes, they will.
Q. And is it anticipated that it will be for approximately five years?
A. Yes.

Q. What provisions have been made in the event that you are unable to manage Michelson Sod Farms for any reason?
A. Mr. Whitehead will take over as manager.

fraud, false claims against the government, and false statements. *United States v. Whitehead,* No. 90–00144 (E.D.Cal.). On January 30, 1991, the day after the confirmation hearing, a superseding indictment was filed adding four counts alleging making a false declaration before a grand jury and subscribing to false federal income tax returns. On June 21, 1988, WEI filed its bankruptcy case;[8] on January 17, 1989, the case was converted to chapter 7. In October 1990 Michelson's bankruptcy counsel became WEI's bankruptcy counsel.[9] Neither the criminal indictment nor the WEI situation was revealed in the disclosure statements, at the disclosure and confirmation hearings, nor while the draft order confirming the plan was circulating among counsel.

Upon reading a newspaper account of Whitehead's guilty plea to one count of mail fraud and one count of subscribing to a false tax return,[10] the creditor's committee filed this adversary complaint seeking revocation of the plan under section 1144 and the appointment of a chapter 11 trustee. Other persons who were affected by the plan of reorganization intervened pursuant to Federal Rule of Civil Procedure 24, which applies in bankruptcy adversary proceedings.[11]

II. *The Role of Disclosure in the Confirmation Process*

The issue of defective disclosure in reorganization cases arises within the framework of chapter 11, which has provisions setting minimum standards for plans (11 U.S.C. § 1123), requiring disclosure of adequate information to those who are entitled to accept or reject the plan (11 U.S.C. § 1125), requiring that the plan proponent prove at the confirmation hearing that it

has complied with those requirements (11 U.S.C. § 1129(a)(2)), and permitting revocation of orders confirming plans based on fraud (11 U.S.C. § 1144).

No acceptance or rejection of a plan of reorganization may be solicited from a claimant during a chapter 11 case without "a written disclosure statement approved, after notice and a hearing, by the court as containing *adequate information.*" 11 U.S.C. § 1125(b) (emphasis supplied).

The term "adequate information" is statutorily defined to mean:

> ... information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class *to make an informed judgment* about the plan.

11 U.S.C. § 1125(a)(1) (emphasis supplied). Whether the disclosure statement contains "adequate information" is a question of bankruptcy law that is independent of non-bankruptcy law relating to disclosure. 11 U.S.C. § 1125(d). That is to say, it is not subject to the same rules and liabilities, for example, as a disclosure statement under the securities laws.

While "adequate information" for making an informed judgment is a flexible concept that permits the degree of disclosure to be tailored to the particular situation, there nevertheless is an irreducible minimum. An informed judgment cannot be made without information about the plan and about how the provisions of the plan will be put into effect. Thus, every plan of reorganization must "provide adequate

---

Transcript at 53 (no one objected to the form of question).

**8.** It is assigned to another judge of this court.

**9.** Debtor's counsel executed application papers on October, 22, 1990 (the day before Western Farm Credit Bank objected to the disclosure regarding Whitehead as being inadequate), seeking permission to be employed as counsel for WEI. In that WEI was in chapter 7, it is not apparent why the application was filed.

**10.** Whitehead was sentenced to concurrent terms of imprisonment: two years for mail fraud and eight months for subscribing to a false tax return. *United States v. Whitehead,* No. 90–00144–001, Judgment Including Sentence Under The Sentencing Reform Act (E.D.Cal. filed Sept. 6, 1991).

**11.** Rule 7024 provides:
Rule 24 F.R.Civ.P. applies in adversary proceedings.
Fed.R.Bankr.P. 7024.

means for the plan's implementation." 11 U.S.C. § 1123(a)(5). Similarly, every disclosure statement needs an explanation of why the proposed means of implementation will be adequate to the task.

Nor does the scrutiny of the accuracy of the disclosure statement end with the presolicitation hearing on the question of whether the disclosure statement contains adequate information. The accuracy of disclosure is an issue that must be addressed at the confirmation hearing where it must be demonstrated by a preponderance of the evidence that the "proponent of the plan complie[d] with the applicable provisions of [title 11]." 11 U.S.C. § 1129(a)(2).

Compliance with the disclosure and solicitation requirements is the paradigmatic example of what the Congress had in mind when it enacted section 1129(a)(2). According to both the House and Senate Reports, that section "requires that the proponent of the plan comply with the applicable provisions of title 11, such as section 1125 regarding disclosure." H.R.Rep. No. 595, 95th Cong., 1st Sess. 412 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 126 (1978); 1978 U.S.Code Cong. & Ad.News 5787 at 5912, 6368.

Reassessing the adequacy of disclosure from the vantage of the confirmation hearing is an efficient safeguard of the integrity of the reorganization process. When the adequacy of information is initially determined during the presolicitation phase, the court is acting in a context in which information may be sketchy and preliminary. The court does not conduct an independent investigation and relies upon its reading of the document for apparent completeness and intelligibility, as well as objections raised by parties in interest.

By the time of the confirmation hearing, the context has changed. More informa-tion is available. The plan proponent has specific facts to prove. The plan proponent's natural enemies have had an opportunity to conduct discovery.[12] What once appeared to be adequate information may have become plainly so inadequate and misleading as to cast doubt on the viability of the acceptance of the plan and to necessitate starting over.

The availability of discovery to objectors does not mean that the plan proponent can pass off the burden of disclosing adequate information. Inquiry notice is antithetical to reorganization procedure. It is inappropriate to require that others presume that they are being misled, disregard a disclosure statement and, in the case of a debtor's plan, disregard the schedules and statement of financial affairs executed under penalty of perjury. *In re Braten Apparel Corp.*, 21 B.R. 239, 259–60 (Bankr. S.D.N.Y.1982), *aff'd,* 26 B.R. 1009 (S.D.N.Y.1983), *aff'd mem.,* 742 F.2d 1435 (2d Cir.1983); *In re Roukous,* 128 F. 645 (D.R.I.1904). The purpose of the disclosure process is to obviate, not necessitate, independent investigation before agreeing to a reorganization.

■ Nor does the court's approval of a disclosure statement as containing adequate information shift the proponent's burden of establishing that full disclosure was made. Rational allocation of incentives requires that the party obliged to disclose bears the risk of defective disclosure. The discloser generally controls, or is able to assemble more efficiently, the pertinent information. Where the discloser lacks access to material information, as in the case of a hostile creditor's plan, the limitations on information ought to be disclosed.

Whatever else may be swept into section 1129(a)(2), it is beyond cavil that the plan

**12.** Federal Rules of Civil Procedure 26–37 apply to objections to confirmation. This key point of procedure is often overlooked by litigants who must make an odyssey through the Federal Rules of Bankruptcy Procedure to determine it. Specifically, Federal Rule of Bankruptcy Procedure 3020(b)(1) provides that an objection to confirmation is a "contested matter" governed by Federal Rule of Bankruptcy Procedure 9014, which in turn provides that Federal Rules of Bankruptcy Procedure 7026 and 7028–37 apply, and that one desiring to perpetuate testimony may proceed in the manner provided by Federal Rule of Bankruptcy Procedure 7027. Rules 7026–37 are identical to each other in form (each stating different Civil Rule number): "Rule [26–37] F.R.Civ.P. applies in adversary proceedings."

proponent must prove, as an essential element to confirmation of a plan of reorganization, that adequate information was disclosed. The doctrine of *caveat emptor* has no application to reorganizations. The corollary is that the risk of defective disclosure is on the discloser. This creates an incentive for the plan proponent to make full, candid, and complete disclosure.[13] The proponent should be biased towards more disclosure than less.

■ In short, the plan proponent bears the ultimate risk of nonpersuasion on the question of compliance with the requirement to disclose adequate information and must bear that burden twice—once at the hearing on the disclosure statement pursuant to section 1125 and once again at confirmation pursuant to section 1129(a)(2).

Finally, as in this instance, confirmation does not necessarily end scrutiny of the disclosure. The order confirming the plan can be revoked for fraud under section 1144. And it can be otherwise modified.[14] One purpose of section 1144 is to guard against the danger that a plan of reorganization will be accepted and confirmed through fraudulent statements or omissions by the plan proponent. Moreover, other forms of liability may also be implicated.[15]

All of these considerations create powerful incentives to make full, candid, and complete disclosure.

## III. *Role of the Court in the Confirmation Process*

The court's role in the confirmation process is more active than its role in garden-variety litigation. Not only must it approve the disclosure statement as containing adequate information, the court must decide for itself whether the elements prescribed for confirmation have been satisfied. 11 U.S.C. §§ 1125 and 1129.

The confirmation hearing is no ministerial exercise. The court is acting as a court of equity and must assure itself that the plan is likely to succeed. *See United States v. Energy Resources Co.*, 495 U.S. 545, 549, 110 S.Ct. 2139, 2142, 109 L.Ed.2d 580 (1990).[16] This requires that the court make an informed, independent judgment regarding each element of confirmation.

The requirement that the court exercise its independent judgment has persisted since the days of equity receiverships, continuing through reorganizations under Bankruptcy Act § 77B, and into the 1978 Bankruptcy Code. It remains the law that "[e]very important determination by the court in receivership [now reorganization] proceedings calls for an informed, independent judgment." *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 115, 60 S.Ct. 1, 7, 84 L.Ed. 110 (1939) (Bankruptcy Act), *quoting, National Surety Co. v. Coriell*, 289 U.S. 426, 433, 53 S.Ct. 678, 681, 77

**13.** This incentive does not discriminate against the hostile outsider who commonly lacks the detailed information one would expect from an insider. Plans proposed by creditors with whom the debtor has not been forthcoming typically are liquidation plans. The definition of "adequate information" accommodates the possibility that adequate information about a liquidation plan may be different than such information about a proposed restructuring of the business. 5 L. King, *Collier on Bankruptcy* ¶ 1125.03[1] at 1125–20 (1992). The definition focuses upon the ability to make an informed judgment "about the plan" and specifically provides that "adequate information need not include such information about any other possible or proposed plan." 11 U.S.C. § 1125(a)(1).

**14.** Although there is a 180–day limit for seeking revocation of a confirmation order, there appears to be no prohibition on later corrective measures that do not constitute revocation.

**15.** The securities laws also may become relevant when disclosure is defective. Judicial approval of a disclosure statement as containing "adequate information" creates a safe harbor from liability under securities laws for those who solicit acceptances of a plan or who participate in offering a security provided that two conditions are satisfied. 11 U.S.C. § 1125(e). The solicitation must be (1) in good faith and (2) in compliance with the Bankruptcy Code. A failure to disclose "adequate information" is a failure to comply with applicable provisions of the Bankruptcy Code and may also flunk the condition of good faith.

**16.** "The Code, moreover, requires a bankruptcy court *to assure itself* that reorganization will succeed, § 1129(a)(11)...."

*Energy Resources Co.*, 495 U.S. at 549, 110 S.Ct. at 2142 (emphasis supplied).

L.Ed. 1300 (1933). *See also, American United Mutual Life Ins. Co. v. City of Avon Park,* 311 U.S. 138, 146, 61 S.Ct. 157, 162, 85 L.Ed. 91 (1940) (Bankruptcy Act). Or, as the Supreme Court said in *Los Angeles Lumber* and reiterated in *City of Avon Park,* the "court is not merely a ministerial register of the vote of the several classes of security holders." *Los Angeles Lumber,* 308 U.S. at 114, 60 S.Ct. at 6; *City of Avon Park,* 311 U.S. at 145, 61 S.Ct. at 162.

The court must apply its informed, independent judgment to all elements of sections 1129(a) and (b), not merely to the "fair and equitable" requirement of section 1129(b) that applies only in so-called "cram down" situations.

The Bankruptcy Code, in a departure from its norm, provides that "the court shall hold a hearing" on confirmation of a plan. 11 U.S.C. § 1128(a).[17] The notice and opportunity for hearing procedure that permits action without an actual hearing where the statute provides for "notice and a hearing" if nobody objects or requests a hearing is inapplicable. 11 U.S.C. § 102(1). The imperative language "the court shall hold a hearing" is too dissimilar from the phrase "after notice and a hearing" to admit of any other conclusion.[18] It is difficult to make an informed, independent judgment without an actual hearing.

And the requirement is reflected in Federal Rule of Bankruptcy Procedure 3020(b)(2), which provides that if no timely objection to confirmation is filed, "the court may determine that the plan has been proposed in good faith and not by any means forbidden by law *without receiving evidence on such issues.*" Fed.R.Bankr.P. 3020(b)(2) (emphasis supplied). As that language parrots the words of 11 U.S.C.

§ 1129(a)(3),[19] it follows by negative inference that evidence must be presented on each of the other twelve elements of section 1129(a). The failure to take evidence regarding each of the other elements specified at section 1129 necessitates remand by an appellate court. *Meyer v. Lenox (In re Lenox),* 902 F.2d 737, 739 (9th Cir.1990). In the absence of such evidence, the court cannot assure itself that the elements of confirmation have been established and must decline to confirm the plan.

A leading scholar of modern reorganization practice describes the court's role as follows:

> The court must satisfy itself that the plan meets the requirements of Chapter 11 and in particular § 1129. Section 1129(a)(1) requires a court to review a plan to make sure that it complies with "the applicable provisions of this title." Thus, the court is supposed to review things, such as classification, sua sponte.

D. Baird, *The Elements of Bankruptcy* at 242 (1992).

In a complicated plan, the confirmation analysis can be extensive. *E.g., In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 723, 759–72 (Bankr.S.D.N.Y.1992).

Effective use of rules of evidence and civil procedure enable the court to assure that its special obligations can be fulfilled efficiently (especially on an uncontested plan). The court can require that evidence be produced in the first instance by affidavit under its power to exercise reasonable control over the mode of presenting evidence so as to avoid needless consumption of time. Fed.R.Evid. 611(a)(2). In addition, it can require affidavits under the applicable rules of procedure. Fed.R.Civ.P.

**17.** "After notice, the court shall hold a hearing on confirmation of a plan." 11 U.S.C. § 1128(a).

**18.** Federal Rule of Bankruptcy Procedure 3020(b)(2) is misleading in its use of the phrase "notice and hearing" in the first sentence: "The court shall rule on confirmation of the plan after notice and hearing as provided in Rule 2002." The rule cannot abridge, enlarge, or modify any substantive right. 28 U.S.C. § 2075. Although Rule 3020(b)(2) uses language that

arguably qualifies for the notice and opportunity for hearing procedure contemplated by section 102(1), the mandate of an actual hearing at section 1128(a) cannot be countermanded by rule.

**19.** Section 1129(a)(3) states:
"(3) The plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3).

43(e); Fed.R.Bankr.P. 9017.[20] If such opportunities are exploited, the confirmation hearing may be used to focus on loose ends.[21]

The court's duty to develop an independent informed judgment justifies greater judicial participation in a confirmation hearing without unduly interfering in the adversary system.[22] *Cf.* B. Russell, *Bankruptcy Evidence Manual*, §§ 614.1 and 614.2 (1991). While a court always has the authority to interrogate witnesses, *see* Fed. R.Evid. 614(b),[23] the court may well be inclined to exercise this authority more freely at confirmation hearings than at ordinary trials.[24] Similarly, the court's authority to call witnesses on its own motion may be especially useful at confirmation hearings. *See* Fed.R.Evid. 614(a); J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 614[02] (1991).[25] And, for the same reasons, it can

be more aggressive about appointing expert witnesses. *See* Fed.R.Evid. 706.

The court's special duties also create special challenges for counsel. Since the court is trying to form an independent, informed judgment about the plan, any disingenuous stratagem by counsel risks being taken as affirmative misrepresentation. It is one thing for counsel in the rough and tumble of litigation to sit silently while an adversary fails to unearth damaging facts by not asking the right questions.[26] It is quite another thing to allow a court to be misled in the exercise of its duty to make an informed, independent judgment. Integrity and honest dealing in the confirmation process is essential to ensuring that the court will not conclude, when trouble later arises, that there has been a fraud upon the court.

> One of the natural parts of the judicial function, in its orthodox and sound recognition, is the judge's power and duty to *put to the witnesses* such *additional questions* as seem to him desireable to elicit the truth more fully. J. Wigmore, *Evidence in Trials at Common Law*, § 784, at 189 (emphasis supplied) (Chadbourn rev. 1970).
>
> The right to question is, of course, limited by the judge's duty to at all times retain the role of impartial arbiter. J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 614[03], at 614–11 (1991).

**20.** Rule 9017 provides:

The Federal Rules of Evidence and Rules 43, 44 and 44.1 F.R.Civ.P. apply in cases under the Code.
Fed.R.Bankr.P. 9017.

The applicability to "cases under the Code" means that these rules apply to all matters that arise in a bankruptcy, regardless of whether they constitute "adversary proceedings" or "contested matters." The uncontested plan of reorganization is a good example of something that is neither adversary proceeding nor contested matter but which is nevertheless subjected to basic rules of evidence and civil procedure.

**21.** Many careful counsel do not wait for the court to insist on such devices and routinely file a battery of affidavits before the hearing addressing each confirmation element so that the court may focus at the confirmation hearing on any specific matters as to which it wants further assurance.

**22.** Although greater judicial intervention is justified, it is not required. The court has the discretion to leave the presentation of evidence at the hearing entirely to counsel and, if not satisfied that the plan meets the requirements for confirmation, merely deny confirmation.

**23.** Wigmore explains:

[T]he judicial power itself ... implies inherently a power to investigate as auxiliary to the power to decide; and the power to investigate implies necessarily a power to summon and to question witnesses.
J. Wigmore, 9 *Evidence in Trials at Common Law*, § 2483, at 276–77 (Chadbourn rev. 1970). According to Wigmore,

**24.** At a confirmation hearing, there is no jury, and it is not, strictly speaking, a trial. The judge is the trier of fact and must be assured that confirmation of the plan is warranted. It follows that the judge has broader discretion to question witnesses than at an ordinary trial.

**25.** Calling witnesses "enables a judge to obtain information which he deems essential to a just and proper decision but which the parties have failed to provide. Such use may be particularly desirable in bench trials or where the interest of others than the immediate parties may be at stake, as in class actions, or matters involving public policy, such as antitrust or patent litigation [or confirmation of plans of reorganization]." J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 614[02], at 614–6—614–7 (1991).

**26.** For example, standard preparation for a witness is to emphasize listening carefully to the question, answering only the question asked, and not volunteering information. T. Mauet, *Fundamentals of Trial Techniques*, at 13 (1980); R. Keeton, *Trial Tactics and Methods*, at 36 (2d ed. 1973).

## IV. Revoking the Order of Confirmation

■ The order confirming a plan of reorganization is an appealable order. Absent a timely appeal, it can be revoked only under the narrow terms of section 1144. The sole permissible basis is fraud that is complained of within 180 days. If there is no fraud, the order cannot be revoked:

> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order *if and only if such order was procured by fraud.* An order under this section revoking an order of confirmation shall—
>
> (1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and
>
> (2) revoke the discharge of the debtor.

11 U.S.C. § 1144 (emphasis supplied). No other provision in the Bankruptcy Code permits a chapter 11 plan confirmation to be revoked.[27]

The use in section 1144 of the emphatic language, "revoke such order if and only if such order was procured by fraud," means that fraud is the exclusive means of revoking an order confirming a chapter 11 plan of reorganization. *See In re Longardner & Assocs., Inc.,* 855 F.2d 455, 460 (7th Cir.1988); *See also In re Newport Harbor Assocs.,* 589 F.2d 20, 22 (1st Cir.1978).

## A. Procedure for Revocation

Section 1144 affects the rules of procedure by constraining the power of the court to revoke a confirmation order as a form of relief from a judgment or order under Federal Rule of Civil Procedure 60(b). The 180–day limitation is implemented at Federal Rule of Bankruptcy Procedure 9024, which provides in pertinent part:

> Rule 60 F.R.Civ.P. applies in cases under the Code except that ... (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330.

Fed.R.Bankr.P. 9024.

The result is that the Congress reduced from 1 year to 180 days the time for revoking a confirmation order under Federal Rule of Civil Procedure 60(b)(3), which otherwise applies in federal civil and bankruptcy matters.[28]

The short period for seeking revocation was also the rule under the former Bankruptcy Act. Various types of plans could be revoked for fraud within six months after confirmation. *E.g.* Bankruptcy Act § 386; *In re Roukous,* 128 F. 645 (D.R.I. 1904);[29] 9 *Collier on Bankruptcy* ¶¶ 11.01 and 11.02[2] (14th ed. 1978).

In practical effect there is a 180–day statute of limitations that balances bankruptcy's strong policy of finality[30] against the need to unravel frauds. After 180 days, one's options become more limited.[31]

---

**27.** There are correlative provisions for revoking confirmation in chapter 12 and 13 cases. 11 U.S.C. §§ 1230 and 1330.

**28.** The facts of this case, where the complaint to revoke confirmation order was filed within 180 days, do not present the question of whether section 1144 preempts a court's inherent power to deal with fraud on the court at any time. *See* 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.33 at 60–356—60–357 (1992); 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2870 (1992); *cf.* 9 L. King, *Collier on Bankruptcy* ¶ 9024.07 (15th ed. 1992).

**29.** The court in *Roukous* made essentially the same analysis regarding revocation of confirmation of a composition under the then-existing version of section 13 of the Bankruptcy Act, which provided:

> The judge may, upon application of parties in interest filed at any time within six months after a composition has been confirmed, set the same aside and reinstate the case if it shall be made to appear upon a trial that fraud was practiced in the procuring of such composition, and that the knowledge thereof has come to the petitioners since the confirmation of such composition.

30 Stat. 544, 550.

**30.** *Cf. In re Edwards,* 962 F.2d 641 (7th Cir.1992) (Posner, J.) (strong policy of finality in bankruptcy coupled with passage of time insulates sale that was without actual notice of secured creditor).

**31.** All is not necessarily lost if fraud goes undiscovered for more than 180 days. Neither section 1144 nor Rule 9024 appears to preclude the court from acting under Rule 60 more than 180 days after confirmation to correct clerical errors or to grant relief from the order by means

### B. The Meaning of "Procured by Fraud"

Since the Congress did not define what constitutes "procured by fraud" for purposes of revoking confirmation, the question is left to judicial construction.[32] When the Congress enacted section 1144, however, it was not writing on a clean slate. There were revocation provisions in the Bankruptcy Act of 1898 that used such terms as "procuring" and "fraud."

#### 1. *Bankruptcy Act of 1898*

Several sections of the former Bankruptcy Act permitted revocation of confirmation of various types of plans, all of which used essentially the same language. The order confirming a Chapter XI plan of arrangement could be set aside under section 386 if "fraud was practiced in the procuring" of confirmation.[33] And Bankruptcy Rule 11–41 provided a procedure for implementing section 386 by permitting the court to entertain a motion to "revoke the confirmation as procured by fraud."[34]

A substantial body of law regarding "fraud practiced in the procuring" of confirmation developed during the fourscore years of the Bankruptcy Act. *See generally,* 9 J. Moore & L. King, *Collier on Bankruptcy* ¶¶ 11.02–11.04, at 645–67 (14th ed. 1978). Fraud meant fraud in fact and required actual fraudulent intent. Omission of a creditor from the schedules in bad faith was fraud, but did not constitute fraud practiced in the "procuring" of the plan if the omitted creditor learned of the existence of the case and filed a claim. A false oath in the schedules was sufficient for fraud. A false representation about intent to remain in business after confirmation was fraud, as was a misrepresentation that the requisite deposit had been made. The fraud of someone other than the debtor would suffice. *Id.* The failure to inform the court that another person had an interest in particular property that was covered by a plan constituted the requisite fraud. *Arnold v. Arnold,* 326 F.2d 960 (9th Cir.1964). The existence of a fraud implied that the plan was not proposed in "good faith," which, then as now, was an essential element for confirmation.

#### 2. *Bankruptcy Code of 1978*

Congress did not work a major change of pre-Code law when it enacted section 1144 of the Bankruptcy Code. The current statutory language, "procured by fraud," is similar to "fraud [that] was practiced in the procuring" (Bankruptcy Act § 386) and identical to the language used in Bankruptcy Rule 11–41. Moreover, nothing in the legislative history of the Bankruptcy Code suggests the contrary.[35] Since section 1144 was derived from Bankruptcy Act § 386 and from Bankruptcy Rule 11–41

---

*other than* revocation of the order. This case, however, does not present the occasion for examining the contours of the relation between revocation and other measures.

**32.** As one court put it in an oft-quoted observation: "Congress provided no dictionary for the word 'fraud' and left it to the development of judicial gloss to guide delineation of types of conduct generally understood to constitute fraud." *Braten Apparel Corp.,* 21 B.R. at 256.

**33.** The pertinent portion of section 386 provided:

If, upon the application of parties in interest filed at any time within six months after an arrangement has been confirmed, it shall be made to appear that fraud was practiced in the procuring of such arrangement and that knowledge of such fraud has come to the petitioners since the confirmation of such arrangement—
[and]
(1) if the debtor has been guilty of or has participated in the fraud or has had knowl-

edge thereof before the confirmation and has failed to inform the court of the fraud, the court may set aside the confirmation....

Bankruptcy Act of 1898, § 386.

Similar provisions also appeared elsewhere in the statute at various times during its tenure.

**34.** The pertinent portion of Rule 11–41 provided:

Any party in interest may, at any time within six months after a plan has been confirmed, make a motion pursuant to the Act to revoke the confirmation as procured by fraud. The circumstances constituting the alleged fraud shall be stated with particularity....

Bankruptcy Rules and Official Bankruptcy Forms, 415 U.S. 1003, 1031 (1974).

**35.** The addition of "and only if" in the 1984 amendments to the Bankruptcy Code does not affect this conclusion. The Congress was merely emphasizing that fraud is the exclusive basis for revoking confirmation.

without substantial change, the cases decided under the former law retain vitality and inform the interpretation of section 1144.[36] 5 L. King, *Collier on Bankruptcy* ¶ 1144.01 at 1144-2 (15th ed. 1992).

The relatively broad range of frauds that justified revoking confirmation under the Bankruptcy Act confirms that a fraud upon the court is at the heart of "procured by fraud" as that term is used at section 1144. In this instance the fraud is misrepresentation, or misrepresentation by omission, of material facts in the disclosure and confirmation process. Such a fraud plainly would have justified revocation of a Chapter XI plan of arrangement under former law and justifies revocation under current law.

### 3. *Intent*

■ Under the Bankruptcy Code, as was settled under the Bankruptcy Act, fraudulent intent is required before revocation is warranted. Specific intent to defraud, however, is not needed. Rather, the requisite intent, in the context of defective disclosure, exists where there is intentional omission of material fact. Thus, a person who (1) is obliged to disclose, (2) knows of the existence of material information, and (3) does not disclose it has fraudulent intent for purposes of revoking the order confirming a plan of reorganization.

Materiality for these purposes is measured by an objective standard drawn from the definition of "adequate information" at section 1125(a) that asks what the "hypothetical reasonable investor typical of holders of claims or interests of the relevant class" would want to know in order to make an informed judgment about the plan. 11 U.S.C. § 1125(a).

Since materiality is not assessed by a subjective standard, it matters little what actually was in the mind of the discloser. That the person obliged to disclose thought particular information was not material makes no difference when, under an objective standard, it was material.

### V. *Fraud on the Court as a Species of "Procured by Fraud"*

Fraud is a broad and ill-defined concept that encompasses fraud by the parties (which is sometimes subdivided into extrinsic and intrinsic fraud) and fraud on the court. *Gumport v. China Int'l Trust & Inv. Corp. (In re Intermagnetics America, Inc.)*, 926 F.2d 912, 916 (9th Cir.1991). The language of section 1144, taken at face value, as well as the settled interpretations of the antecedent provisions under the Bankruptcy Act, suggest that any fraud will suffice, so long as an issue is made of it early enough.

Regardless of whether section 1144 sweeps broad or narrow with respect to other species of fraud, fraud on the court is one species that unquestionably is a basis for revoking the order confirming a plan of reorganization.

The court's duty to make an informed, independent judgment regarding confirmation issues puts the court at center stage during the confirmation process. Recalling that the statute requires that the order confirming the plan have been "procured by fraud," it is apparent that pulling the wool over the eyes of the court impairs the judicial machinery in the performance of its duty. This satisfies the statutory requirement that the order confirming the plan have been "procured by fraud."

### A. The Meaning of Fraud on the Court

In the Ninth Circuit, the definition of fraud on the court follows that proposed by Professor Moore:

"Fraud upon the court" ... embrace[s] only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its im-

---

**36.** The Bankruptcy Code actually expands the scope of former law by eliminating the requirement that the fraud must have been perpetrated by the debtor. Instead of a straightforward adaptation that would have limited the fraud to the proponent of the plan in recognition that someone other than the debtor could now propose a plan, the Congress eliminated perpetrator requirement entirely.

partial task of adjudging cases that are presented for adjudication.

*Intermagnetics America,* 926 F.2d at 916, *and Alexander v. Robertson,* 882 F.2d 421, 424 (9th Cir.1989), *both quoting* 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.-33, at 515 (2d ed. 1978). *See Abatti v. Commissioner,* 859 F.2d 115, 118–19 (9th Cir.1988).

While much of that definition does little to clarify an inherently nebulous concept and has been criticized as not being particularly helpful, Moore's definition encompasses points of general agreement: (1) there is a distinction between garden-variety fraud and fraud on the court; (2) more than injury to a single litigant is usually involved; (3) participation by an officer of the court will elevate garden-variety fraud to fraud on the court; and (4) the Supreme Court's decision in *Hazel–Atlas Glass* provides the framework for analysis. *Hazel–Atlas Glass Co. v. Hartford Empire Co.,* 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944); *Toscano v. Commissioner,* 441 F.2d 930, 933–34 (9th Cir.1971) (criticizing Moore's and others' definitions as futile and applying *Hazel–Atlas Glass* to find fraud on court); 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2870 (1991).

■ Distilling Moore's definition, the elements for a fraud on the court perpetrated by an officer of the court are: (1) an officer of the court (2) perpetrated a fraud (3) that impaired the court's ability to perform its impartial task of adjudging cases. The officer of the court must have fraudulent intent, which connotes either knowledge, including reckless disregard, of falsity or intentional omission of material information.

Fraud on the court differs from other species of fraud in key respects. The important inquiry is whether the fraud harmed the integrity of the judicial process, not whether the fraud prejudiced a party or caused economic loss.[37] *Intermagnetics America,* 926 F.2d at 917; *Alexander,* 882 F.2d at 424.

The seminal case for this view of fraud on the court was *Hazel–Atlas Glass,* a patent case in which evidence introduced to support the patent application included a laudatory published article about the invention purportedly written by a disinterested expert but actually written by the applicant's counsel and officers. The failure to disclose to the court the true authorship justified remedial action years later:

> [T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victim of deception and fraud.

*Hazel–Atlas Glass Co.,* 322 U.S. at 246, 64 S.Ct. at 1001, *quoted in Intermagnetics America,* 926 F.2d at 917. 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60–33 (2d ed. 1991); 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2870 (1991).

**B. Participation by an Officer of the Court**

Behind most frauds on the court lurks an officer of the court. And, as noted above, participation by an officer of the court elevates garden-variety fraud into fraud on the court. Accordingly, it is pertinent to

---

**37.** This is where courts get off the track when they wrestle with the lack of a specific definition of fraud at section 1144 and analogize to deceit or "actual fraud." *E.g. In re Mosely,* 74 B.R. 791, 803 (Bankr.C.D.Cal.1987); *In re Kostoglou,* 73 B.R. 596, 598 (Bankr.N.D.Ohio 1987); *In re Edwards,* 67 B.R. 1008 (Bankr.D.Conn. 1986); *In re Braten Apparel,* 21 B.R. at 256. The difficulty with such analogies is that they artificially import policy considerations that are inapplicable, unduly diminish the factor of the effect of the conduct on confirmation in favor of looking for actual damage, and may eventually lead to the kind of perverse results that historically have made courts reluctant to craft rigid definitions of fraud.

focus on just who is an officer of the court in the context of bankruptcy.

Counsel practicing before the court is *a fortiori* an officer of the court. So is the bankruptcy trustee. The debtor in possession also qualifies as an officer of the court by virtue of performing the trustee's duties, which include fiduciary obligations while acting as representative of, and in the best interests of, the estate. *Intermagnetics America*, 926 F.2d at 917; *cf.* 11 U.S.C. § 323(a).

Which officer of the court is involved may also make a difference. It has been argued that participation by counsel is virtually essential in order to qualify a fraud as a true fraud on the court. Professor Moore opines that it was counsel's role in *Hazel–Atlas Glass* that made the use of the manufactured evidence a true fraud on the court:

> [A]n attorney of Hartford was implicated in perpetrating the fraud. We believe that this is important, for, while an attorney should represent his client with singular loyalty, that loyalty obviously does not demand that he act dishonestly or fraudulently; on the contrary his loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court. And when he departs from that standard in the conduct of the case he perpetrates a fraud upon the court.

7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.33 at 60–359 (1991). *Accord,* 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2870 at 256 (1991) ("whether perjury constitutes a fraud on the court should depend on whether an attorney or other officer of the court was a party to it.")

VI. *Materiality of the Defective Disclosure Regarding Whitehead*

■ We now turn to the materiality of the debtor's failure to disclose Whitehead's federal indictment and the WEI bankruptcy.

The undisclosed information was material to two distinct confirmation elements. First, it affected the answer to the question of whether adequate means were provided for implementing the plan. 11 U.S.C. §§ 1123(a)(5) and 1129(a)(1). Michelson's plan emphasized the importance of Whitehead as a financial manager for MSF. The basic premise was that Michelson was a good sod farmer but a poor businessman whose problems would be corrected by the assistance of a sophisticated financial manager, who had agreed to stay with MSF for at least five years. Moreover, it was trumpeted that Whitehead would take over the entire MSF operation if Michelson (a septuagenarian) should be unable to manage MSF.

Having elected to portray Whitehead as a "key man" for the success of the plan, the debtor made Whitehead's continued employment for five years after confirmation a "means" for implementing the plan.[38] The fact that Whitehead faced a possibility of incarceration casts doubt upon his ability to stay with MSF for five years. And the bankruptcy of WEI, which company he claimed to have built into a $5 million per year operation, clouded his credentials as a financial expert. Under any objective standard, the omissions regarding the indictment and the WEI bankruptcy were pertinent to the question whether there were "adequate means for the plan's implementation" as required by 11 U.S.C. § 1129(a)(5).

Second, given the importance that the debtor ascribed to Whitehead's role under the plan, it was material to the issue of whether confirmation was likely to be followed by liquidation, or the need for further financial reorganization not proposed by the plan. 11 U.S.C. § 1129(a)(11). The court must make a negative finding on this question before it can confirm a plan. *Id.*

If Whitehead was so important to the MSF operation for the ensuing five years,

---

**38.** It is of no consequence that continued employment of a particular individual is not among the means for a plan's implementation that are enumerated at section 1123(a)(5). The preambular language, "such as," to that list makes clear that the named means are merely examples. The use of the connector "or" between subsections (a)(5)(I) and (J) compels the same conclusion under the rule of construction prescribed at 11 U.S.C. § 102(5).

then facts suggesting that he might not be able, or be competent, to perform the services plainly were, on an objective standard, material to confirmation. And there can be little question that the undisclosed facts about Whitehead were important. Not only did the fact of the indictment raise the possibility that he might become unavailable to perform his promise, the contents of the indictment, as it stood at the time of confirmation, charged Whitehead with financial crimes directly pertained to his qualifications to be MSF's principal financial officer under the plan of reorganization.[39]

These uncontested facts, when considered in light of the contest over the disclosure and confirmation proceedings, admit of but one conclusion—the damaging information was likely to have made a difference to the outcome of the matter if it had been known. The court necessarily would need to know about the existence of such charges in order to make the required informed, independent decision about the proposed plan of reorganization.

## VII. *Fraud on the Court at Confirmation Hearing*

In order to find a fraud on the court in this case, it must be demonstrated that an officer of the court perpetrated a fraud, with fraudulent intent, that impaired the court's ability to perform its impartial adjudicatory responsibilities. Those three elements are considered in turn.

### a. Officer of the Court

At least two officers of the court participated—Michelson in his capacity as debtor in possession and, more important, his counsel.

### b. Perpetrating a Fraud

It is uncontested that both Michelson and his counsel knew that the representations in the disclosure statement about Whitehead's qualifications did not disclose the true status of Whitehead's company. And it is uncontested that they knew of Whitehead's federal indictment at the time of the disclosure statement and at the time of the confirmation hearing at which Whitehead and Michelson each testified about Whitehead's role in implementing the plan. For the reasons discussed above, the omitted information was material to the decision on confirmation of the plan of reorganization.

Michelson's counsel assumed an active role in formulating Michelson's and Whitehead's testimony, as is apparent from the leading form of many of the pertinent questions.[40] *See* Fed.R.Evid. 611(c). Evidence and testimony at confirmation hearings, as in all bankruptcy matters, is taken pursuant to the Federal Rules of Evidence. Fed.R.Evid. 1101(b); Fed.R.Bankr.P. 9017. This illustrates one of the pitfalls of asking leading questions of a friendly witness on direct examination even where nobody objects.[41]

### c. Intent

The violation by officers of the court of a duty to disclose material facts constitutes fraud if the officers know the facts, know or should know that the facts are material, and do not disclose them. Intent is intensely a question of fact that is intertwined with what the actors knew or should have known. Proof of fraudulent intent is rarely susceptible of direct proof and usually entails drawing common-sense inferences

---

**39.** The indictment charged Whitehead with falsifying reports to the government for the purpose of receiving double payments for the same costs, altering the WEI's inventory in anticipation of an audit, charging the government for the unearned salaries under the name of Whitehead's spouse, and falsifying WEI's records concerning the compensation to Whitehead. He ultimately pled guilty to one count of subscribing to false tax returns.

**40.** *See* Transcript, *supra,* nn. 6 & 7.

**41.** One of the standard reasons for the general rule against leading questions is "that the party calling a witness, knowing what the witness may prove, might by leading bring out only that portion of the witness' story favorable to his own case." 3 J. Weinstein, *Weinstein's Evidence,* ¶ 611[05], at 611–77 (1992). The pitfall in this instance is that counsel, by putting words into Michelson's and Whitehead's mouths, has greater difficulty disclaiming participation in a fraud on the court.

from circumstantial evidence of specific intentional acts or omissions. *Braten Apparel Corp.*, 26 B.R. at 1014.

The debtor concedes that the nondisclosures in this instance were intentional, but attempts to negate the inference of intent with several arguments, none of which is availing.

The debtor's duty to disclose Whitehead's indictment is not affected by the fact that the indictment was a public record available to anyone who cared to look at the file of his case in the United States District Court.[42]

Michelson's argument that the creditor's committee had a duty of vigilance to guard against material misstatements and omissions in Michelson's disclosure turns the duty to disclose on its head.[43] As noted above, inquiry notice is alien to the duty to disclose adequate information. Moreover, an implication of that argument in light of the duty of the court to make an informed, independent judgment is that the court accepts the plan proponent's evidence at its own risk. That is not the law.

Nor is there refuge in the assertion that Whitehead's indictment consisted of mere unsubstantiated allegations.[44] Similarly, the argument that the description of WEI was provided merely for the (undisclosed) limited purpose of showing that Whitehead had experience with a company of similar size is defeated by the failure to be candid about the limited purpose.

The plan proponent, having elected to make Whitehead a "means" for implementation of the plan, was required to make full disclosure regarding matters that are material to the chosen "means" for implementing the plan. It is inconceivable that either the debtor or his counsel could reasonably conclude that the information in question would not make a difference to a hypothetical reasonable investor.[45]

In short, both Michelson and his counsel knew, or should have known, that the information regarding Whitehead and WEI was material and that nondisclosure would tend to mislead. The question then becomes whether the fraud impaired the adjudication process.

#### d. Impairing the Adjudication Process

The final element of fraud on the court by an officer of the court is that the court's ability to perform its duty to make an impartial adjudication must have been impaired.

There can be little question that this element is satisfied. The confirmation hearing would have been quite a different affair if the undisclosed facts had been

**42.** The Answer filed in this adversary proceeding asserts that "the existence of the indictment and superseding indictment were public record and ..., as such, Plaintiff had either actual knowledge or constructive knowledge thereof." Answer, ¶ 27.

> Michelson thereafter argued:
> Plaintiff [creditor's committee] was not barred from any investigation or discovery regarding Mr. Whitehead. Plaintiff chose not to investigate. Therefore, Defendant had no obligation to revise or amend the Disclosure Statement and resume.

Objection And Memorandum Of Points And Authorities Supporting Objection To Motion For Summary Judgment And Appointment Of Trustee, at 20 (hereafter "Objection And Memorandum").

**43.** The precise language of the argument was:

> Equitable principles dictate that Plaintiffs['] lack of vigilance is grounds not only to deny the immediate relief requested, but to dismiss the Complaint.

Objection and Memorandum, at 20.

**44.** Accepting the principle that one is innocent until proven guilty, the indictment reflected the concurrence of twelve or more grand jurors that a crime was committed and that the defendant should be held to answer for it. U.S. Const. Fifth Amendment; Fed.R.Crim.P. 6(f) and 7. A pending indictment for financial crimes certainly raises sufficiently legitimate questions about one's qualifications to be a chief financial officer under a plan of reorganization as to warrant disclosure and explanation.

**45.** The argument that the financial crimes charged in the indictment, which included cooking the books, had "no bearing or effect on Mr. Whitehead's duties and performance [as MSF's chief financial officer]" and that "it was inconceivable that the Creditor's Committee might give any weight to the indictment's allegations" fails the straight-face test. The only plausible explanation for nondisclosure was that nondisclosure was intended to facilitate confirmation of the plan.

known. It is unlikely that the plan would have been confirmed. Patently defective disclosure would, in and of itself, have been fatal to confirmation because the plan proponent would not be able to prove that he complied with the requirement to disclose "adequate information." 11 U.S.C. §§ 1125 and 1129(a)(2).

In addition, the undisclosed facts, in light of the nature of Whitehead's promised role, cast doubt on, and likely would have been fatal to, the required conclusion that confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). This determination of feasibility requires discriminating judgment and careful balancing of complex factors that cannot reliably be made without full and complete disclosure of material facts.

The suppression of material facts that likely would have led to a different result unambiguously constitutes an impairment of the adjudicatory process. In the disclosure and confirmation process in reorganizations under chapter 11, the plan proponent and the proponent's counsel have a duty to make full, candid, and complete disclosure of material facts. Failure to do so may lead, as here, to a conclusion that there has been a fraud on the court.

## VIII. *Revocation of an Order of Confirmation*

Having concluded that there was a fraud on the court that was material to confirmation, the order confirming the plan of reorganization must be revoked.

Two additional matters must be addressed as required by section 1144. First, the order revoking the confirmation must also revoke the discharge of the debtor. 11 U.S.C. § 1144(2). The revocation of discharge does not necessarily preclude a later discharge, rather it restores the status quo immediately before confirmation. A future discharge, in principle, remains available either by way of another confirmed plan of reorganization or, following

conversion, under chapter 7. An objection to future discharge of an individual is also permitted.

Finally, the order revoking the plan must contain provisions that are necessary to protect any entity that acquired rights in good faith reliance on the order of confirmation. 11 U.S.C. § 1144(1). The intervenors are such persons and are agreed upon language that will protect their rights.