NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1702
_____

In re: VIRGIN ORBIT, LLC;
                                        Debtor

Dr. Tamas Hampel,
                                        Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:24-cv-00328)
District Judge: Honorable Maryellen Noreika

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 19, 2025

Before: HARDIMAN, MATEY, and CHUNG, <u>Circuit Judges</u>

(Opinion filed: September 26, 2025)
_____

OPINION[*]
_____

PER CURIAM

    Virgin Orbit, LLC, a company that provided satellite launch services, filed for

Chapter 11 bankruptcy in April 2023. After obtaining debtor-in-possession ("DIP")

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

financing from Virgin Investments Limited ("VIL"), Virgin Orbit's indirect parent and prepetition senior secured lender, and setting bidding procedures under the supervision of the Bankruptcy Court, Virgin Orbit sought to sell substantially all its assets.[1] Because efforts to sell the company as a going concern were unsuccessful, the company separated its assets into five groups. All but one group of assets sold at auction to non-insider purchasers; after further negotiation, the fifth group of assets sold to a non-insider who had made an unsuccessful bid at auction. The Bankruptcy Court approved all five sales.[2] Remaining after these sales were a portion of the company's intellectual property ("IP") assets, for which the company could not find any buyers willing to pay more than a de minimis value.

After the asset sales did not generate enough money to repay VIL's DIP claim, VIL agreed to receive significantly less than full repayment of its senior secured claims as part of a global settlement that allowed a plan that would satisfy administrative expenses and other priority claims and provide a small distribution to holders of unsecured claims. As part of its recovery on its allowed claim under the proposed plan,

---

[1] As we write primarily for the parties, who are familiar with the facts, we will discuss further details only as they are relevant to the analysis.

[2] In so doing, the Bankruptcy Court determined, inter alia, that the bidding procedures were fair; the decisions to enter into the sales agreements were supported by good, sufficient, and sound business reasons; the negotiations were at arm's length and in good faith; the buyers were not insiders; and the consideration for each sale was fair, reasonable, and the highest and best offer. See, e.g., D. Del. Bankr. No. 23-bk-10405, ECF No. 364.

2

VIL obtained the remaining IP assets.  Equity interest holders, including the appellant, Dr. Tamas Hampel, received nothing because their shares were cancelled.  Dr. Hampel did not object to the proposed plan, which the Bankruptcy Court confirmed.[3]  No appeal was taken from the confirmation order.

Approximately five months after the Bankruptcy Court confirmed the plan, Dr. Hampel filed his "notice of objection" to the confirmation of the plan.  See D. Del. Bankr. No. 23-bk-10408, ECF No. 17.  Specifically, he asserted that the cancellation of his 763,044 shares was procured by fraud because VIL had received $3.7 billion in assets when it was awarded the remaining IP assets.[4]  See id. at 1.  In support, he noted a valuation of the company when it went public; the initial interest in the sale of Virgin Orbit as a going concern; an article about the Pentagon's interest in the company; and a video about the UK Space Agency's interest in horizontal satellite launch technology.  Id. at 2.  He sought revocation of the confirmation order under 11 U.S.C. § 1144.

After holding a hearing, the Bankruptcy Court denied Dr. Hampel's motion.  The Bankruptcy Court concluded that res judicata barred any arguments that Virgin Orbit did not fairly or properly market and sell the assets.  The Bankruptcy Court further

_____

[3] In confirming the plan, the Bankruptcy Court concluded, inter alia, that the global settlement, as incorporated and implemented by the plan, was fair, equitable, reasonable, and in the best interests of the debtors and their estates; that the plan complied with all relevant provisions of § 1129 of the Bankruptcy Code; and that the plan was proposed in good faith and not forbidden by law.  See D. Del. Bankr. No. 23-bk-10405, ECF No. 604.

[4] Other equity holders joined his motion, but he alone filed this appeal.

3

determined that Dr. Hampel had not met the test to show that the confirmation order was procured by fraud. See Bankr. ECF No. 64 (citing In re Melinta Therapeutics, Inc., 623 B.R. 257, 263-64 (Bankr. D. Del. 2020)). Among other things, the Bankruptcy Court noted that the value of the IP assets was determined by a fair and open sale process that revealed what the market would pay.

Dr. Hampel filed a timely appeal to the District Court. He submitted a brief, essentially arguing that the Bankruptcy Court erred in denying his motion because Virgin Orbit misrepresented the valuation of the IP assets and conducted the sales process in a way that undervalued them. He also filed two motions for the District Court to consider new evidence.[5]

The District Court denied the motions to consider new evidence (while also concluding that the proposed additional evidence was not relevant to the question whether the confirmation order had been procured by fraud). The District Court also agreed with the Bankruptcy Court that Dr. Hampel did not meet his burden to show that the confirmation order should be revoked under § 1144 of the Bankruptcy Code because it was procured by fraud. Dr. Hampel filed a timely appeal.

---

[5] He asked the District Court to consider 1) a Hungarian Security and Defense Expert's opinion that the $3.7 billion valuation of the IP assets is justified, and 2) a video interview in which the former CEO of Virgin Orbit discusses the current ownership of the IP assets and the efforts to license the "amazing technology."

We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291.[6] We review the District Court's legal conclusions de novo. See In re Trans World Airlines, 145 F.3d 124, 131 (3d Cir. 1998). To determine whether the District Court erred in its review of the Bankruptcy Court's factual findings, we consider whether those findings are clearly erroneous. See In re Fegeley, 118 F.3d 979, 982 (3d Cir. 1997). We do not review any arguments that Dr. Hampel raises for the first time on appeal.[7] See Simko v. U.S. Steel Corp., 992 F.3d 198, 205 (3d Cir. 2021) ("[A]rguments raised for the first time on appeal are not properly preserved for appellate review.").

First, we agree with the District Court that Dr. Hampel could not present his new evidence, which related to the value of the IP assets. The District Court was sitting as an appellate court and could not consider that evidence that had not been presented to the factfinder, the Bankruptcy Court, and made a part of the record.[8] See In re Madera, 586 F.3d 228, 234 (3d Cir. 2009).

Second, we agree that Dr. Hampel did not meet his burden to show that the confirmation order should be revoked. Under § 1144 (on timely request and with proper

---

[6] The Bankruptcy Court had jurisdiction under 11 U.S.C. § 101 et seq., and the District Court had jurisdiction under 28 U.S.C. § 158(a).

[7] We also do not reach arguments that District Court declined to hear because Dr. Hampel had not presented them to the Bankruptcy Court.

[8] As the District Court explained, Dr. Hampel could have earlier presented valuation evidence to the Bankruptcy Court. And, in any event, the evidence is not relevant to the § 1144 analysis.

procedural protections), a bankruptcy court may revoke a confirmation order, but "if and only if such order was procured by fraud." 11 U.S.C. § 1144. The statue does not further define "fraud" or "procured by fraud." However, it has been said that "fraud upon the court is at the heart of 'procured by fraud' as that term is used at section 1144." In re Michelson, 141 B.R. 715, 725 (Bankr. E.D. Cal. 1992). Other types of fraud may also come within the scope of the term. Compare id. with In re Melinta Therapeutics, Inc., 623 B.R. at 263. In any event, courts agree that "a showing of actual fraudulent intent" is required to prove that a confirmation order was procured by fraud. In re Longardner & Assocs., Inc., 855 F.2d 455, 461-62 (7th Cir. 1988).

Dr. Hampel did not show that Virgin Orbit acted (or omitted to act) with actual fraudulent intent so he was not entitled to a revocation of the confirmation order. See In re D.F.D. Inc., 43 B.R. 393, 395 (Bankr. E.D. Pa. 1984) (holding that a litigant who failed to produce evidence at a hearing "clearly failed to establish the requisite fraudulent intent needed to prove fraud"). At essence, he argued (and continues to argue) that Virgin Orbit committed fraud because it did not treat the remaining IP assets as highly valuable. But Virgin Orbit and the Bankruptcy Court were guided by what the market would pay for the IP assets. "[T]he market's reaction to a sale best reflects the economic realities of assets' worth." In re SubMicron Sys. Corp., 432 F.3d 448, 461 (3d Cir. 2006). Dr. Hampel, citing In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986), challenges the District Court's reliance on the sale in rejecting his appeal because he believes that the sale was not in good faith (claiming rushed timing and the exclusion of

bidders).  See, e.g., 3d Cir. Doc. No. 9 at 22.  But, in In re Abbotts Dairies, the Bankruptcy Court had not made a required finding about the good faith of the purchaser. See 788 F.2d at 149-50.  Here, the Bankruptcy Court had made findings about the fairness and openness of the sale, see supra n.2, so the District Court could consider the market's valuation of the IP assets.  In short, neither we, nor the Bankruptcy Court nor the District Court, can infer fraud from Dr. Hampel's belief that the IP assets were or are worth more than what the market would bear.  Cf. In re Vandeweghe, 49 F.2d 939, 940 (S.D.N.Y. 1931) (explaining that, in determining whether to set aside a confirmation order, "[f]raud is not to be inferred").

For these reasons, we will affirm the District Court's judgment.