**In re KOBRA PROPERTIES, a California General Partnership, Kobra Preserve, LLC, Vernon Street Associates, LLC, Rocky Ridge Center, LLC, Debtor(s).**

Nos. 08–37271, 08–38105, 08–37272, 08–37273.

United States Bankruptcy Court, E.D. California.

June 1, 2009.

Donald W. Fitzgerald, Felderstein Fitzgerald Willoughby & Pascuzzi LLP, Sacramento, CA, prospective attorneys for chapter 11 trustee, Steven L. Victor.

Judith C. Hotze, United States Department of Justice, Sacramento, CA, for Acting United States Trustee, Region 17, Sara L. Kistler.

Donna T. Parkinson, Parkinson Phinney, Sacramento, CA, prospective attorneys for the Official Committee of Unsecured Creditors.

Susan S. Davis, Cox, Castle & Nicholson LLP, Los Angeles, CA, for Dexia Real Estate Capital Markets.

Michele Sabo Assayag, Assayag & Mauss, Costa Mesa, CA, for Union Bank of California, N.A.

Ronald H. Sargis, Hefner, Stark & Marois LLP, Sacramento, CA, for Exchange Bank.

Mary Olden, McDonough, Holland & Allen PC, Sacramento, CA, for KeyBank National.

Peter L. Duncan, Pyle Sims Duncan & Stevenson APC, San Diego, CA, for Jack in the Box.

Hayne R. Moyer, Kronick, Moskovitz, Tiedemann & Girard, Sacramento, CA, for Umpqua Bank.

Lisa Lenherr, Law Offices of James A. Tiemstra, Oakland, CA, for Bank of the West.

Brian A. Bobb, Jeffer, Mangels, Butler & Marmaro LLP, San Francisco, CA, for Mechanics Bank.

R. Dale Ginter, Downey Brand LLP, Sacramento, CA, for general partners of Kobra Properties, Abolghassem Alizadeh and Kobra Alizadeh.

William D. Schuster, Allie & Schuster, P.C., Santa Ana, CA, for HD Supply Construction Supply, Ltd., a limited partnership dba HD Supply White Cap Construction Supply formerly White Cap Construction Supply, Inc.

Vincent J. Novak, Morrison & Foerster, San Francisco, CA, for Sterling Savings Bank.

Martha E. Romero, Romero Law Firm, Whittier, CA, for County of Placer, California, a California taxing authority.

Gerald P. Kennedy, Procopio, Cory, Hargeaves & Savitch, San Diego, CA, for Key Real Estate Group.

Scott Olson, Sedgwick Detert, San Francisco, CA, for First Horizon Home Loan Corporation.

## OPINION

KLEIN, Bankruptcy Judge.

The question is whether 11 U.S.C. § 327(a) allows a law firm to switch clients so as to represent a newly-appointed chapter 11 trustee after having represented the official committee of unsecured creditors. A diligent month-long search by the trustee for counsel has been fruitless. The exigencies of this complex operating real estate situation imperil the estates if the trustee remains stymied by lack of counsel.

There has been full, candid, and complete disclosure to all parties in interest. The committee consents to the withdrawal and re-employment and has located substitute counsel. Any action by the trustee against the committee or its members will be pursued by separate conflicts counsel. The secured creditors, as well as the principals of the jointly-administered debtors, either support or do not oppose the change in counsel. The United States trustee objects that the potential for appearance of impropriety or misplaced loyalties warrants careful scrutiny for conflict of interest.

The dearth of suitable eligible counsel, the universal consent by creditors following full disclosure, and the general coincidence of economic interests of the unsecured creditors and of the trustee in optimizing the value of these estates, combine to warrant GRANTING the chapter 11 trustee's motion to employ the withdrawing committee counsel.

### Facts

These four jointly administered cases were filed between November 25 and December 9, 2008. The lead case is Kobra Properties, a California general partnership. The other debtors, Kobra Preserve, LLC, Vernon Street Associates, LLC, and Rocky Ridge Center, LLC, are all California limited liability companies that are affiliates of Kobra Properties and are part of a complex structure of another twenty-one affiliates that are not debtors.

The debtors construct, own, and/or operate eighty-eight diverse commercial properties located primarily in California's Central Valley. Some of the affiliates operate enterprises, including franchised restaurants (e.g., Jack in the Box, T.G.I. Friday's, Qdoba), that are tenants of the debtors.

The scheduled liabilities are $418 million against assets scheduled at $665 million and estimated by the trustee at $375–$400 million. The largest creditor is Wells Fargo Bank, which claims $154 million in its own right and $71 million as administrative agent and sole lead arranger of a loan syndicate.

At the outset of the case, the debtors in possession proposed hiring a "chief restructuring officer" (CRO) in an effort to defuse fear and loathing by various banks regarding self-dealing and lack of transparency. This elicited skepticism because of the vagueness of the CRO concept in the context of chapter 11 (as opposed to the turnaround and workout environment) and the inability to articulate whether and to whom a CRO would owe fiduciary and loyalty duties and how those duties would

contrast with the duties of a chapter 11 trustee. The initial CRO request was withdrawn.

When, months later, the debtors in possession revived their CRO proposal in the face of persistent cash collateral issues, the denouement was agreement that the proposed CRO could be appointed as chapter 11 trustee. Accordingly, the debtors, the creditors' committee, and Wells Fargo Bank stipulated to appointment of a chapter 11 trustee and jointly recommended the individual proposed as CRO. The United States trustee, consulting with parties in interest per 11 U.S.C. § 1104(d), accepted the recommendation and appointed Steven L. Victor of Development Specialists, Inc., effective April 2, 2009.

The chapter 11 trustee promptly began interviewing potential counsel and, there being numerous institutional creditors, was frustrated as one prospective counsel after another bowed out on account of conflicts or inability to undertake an immediate labor-intensive representation requiring business expertise and sufficient staff to handle complex chapter 11, mechanics' lien, trade creditor, and lender security issues.

The search effectively exhausted the roster of law firms with chapter 11 skills in the Eastern District of California (many of which were already in the case representing creditors). The trustee extended the search to other districts.

There are two handicaps in attracting counsel from a distance. First, the peculiarities of the case potentially require substantial legwork at the debtors' various locations in the Central Valley. Worse, the main immediate source for payment of professional fees comes from encumbered rents that leave counsel in the unappetizing position of dependancy on negotiating carve-outs from cash collateral of creditors who are not happy.

By the end of April, the trustee concluded that the only practicable solution would be to employ counsel for the committee of unsecured creditors, Felderstein Fitzgerald Willoughby & Pascuzzi LLP, which had earlier indicated that it would consider such a move only as a last resort and then only if permitted by the Bankruptcy Code, endorsed by the committee, and supported by the major parties to the chapter 11 cases.

Meanwhile, litigation pressures were approaching a crisis. Throughout April, the trustee had been appearing in court almost weekly without representation, pleading for time while fending off stay relief motions and trying to respond to cash collateral issues raised by other creditors.

The motion to employ the Felderstein Fitzgerald firm was filed May 1, 2009, accompanied by papers fully disclosing the situation. Dexia Real Estate Capital Markets filed a nonobjection "objection," supporting employment but noting it did not consent to use of cash collateral. The United States trustee objected based on a concern that the Felderstein Fitzgerald firm "may hold a materially adverse interest, based on either an appearance of impropriety or a potential conflict of interest, due to its prior representation of the Committee in this case."

Findings and a ruling authorizing the employment were made orally on the record at the close of the hearing on May 13, 2009, so that the trustee could proceed immediately. This memorandum decision further memorializes that ruling.

### Jurisdiction

Jurisdiction is founded upon 28 U.S.C. § 1334(a). The trustee's employment of counsel is a core proceeding. 28 U.S.C. § 157(b)(2)(A).

### Analysis

The question resolves into three overlapping inquiries derived from the requirements of § 327(a) that a professional be "disinterested" and "not hold or represent an interest adverse to the estate" and of § 327(c) that employment be disapproved if there is an "actual conflict of interest."

Thus, as a matter of law, is the former (it is assumed that withdrawal has occurred) counsel for the unsecured creditors' committee employed under 11 U.S.C. § 1103 eligible to be employed by the trustee under § 327(a)? If such employment is not barred as a matter of law, then the question becomes whether the employment should be authorized in this instance. Both questions are answered in the affirmative.

### I

Procedure first. In employment matters, the fundamental procedural requirement is that the applicant make full, candid, and complete disclosure of all of the professional's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed by the office of the United States trustee. Fed. R. Bankr.P.2014(a); *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.)*, 63 F.3d 877, 880–82 (9th Cir.1995); *Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney (In re Tevis)*, 347 B.R. 679, 693–94 (9th Cir.BAP2006); *COM–1 Info., Inc. v. Wolkowitz (In re Maximus Computers, Inc.)*, 278 B.R. 189, 195–96 (9th Cir.BAP2002); *In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 237 (Bankr.E.D.Cal.1988); *United States v. Azevedo (In re Azevedo)*, 92 B.R. 910, 910–11 (Bankr.E.D.Cal.1988).

█ The duty to disclose is a continuing obligation as to which the risk of defective disclosure always lies with the discloser. *Park–Helena Corp.*, 63 F.3d at 880–81; *cf. Official Comm. of Unsecured Creditors v. Michelson (In re Michelson)*, 141 B.R. 715, 719–20 (Bankr.E.D.Cal.1992) (defective § 1125 disclosure).

█ Disclosure that later turns out to be incomplete can be remedied by denial of fees. *Park–Helena Corp.*, 63 F.3d at 880–81; *cf.* 11 U.S.C. § 328(c) (retroactive denial of compensation). Accordingly, this Sword of Damocles should be omnipresent in the mind of counsel.

Here, by all appearances, there has been full, candid, and complete disclosure of the situation. A hearing conducted on notice to all parties in interest was held, in which a substantial majority of those who have heretofore participated in the case (and should have reason to know of defective disclosure) appeared, were heard, and articulated no such concerns. Thus, the employment is in a procedural posture to be decided.

### II

Whether employment by the trustee under § 327(a) of counsel formerly employed to represent a committee pursuant to § 1103 may, as a matter of law, be authorized subdivides into three overlapping questions posed by §§ 327(a) and (c). Is the counsel "disinterested"? Does the counsel "hold or represent an interest adverse to the estate"? Is counsel affected by an "actual conflict of interest"?

### A

█ The first requirement of § 327(a) is that the prospective counsel be "disinterested." That term is defined in a manner that requires a journey through the definitions of "disinterested person," "person," "creditor," "insider," "affiliate," and "relative." 11 U.S.C. §§ 101(2) ("affiliate"), 101(10) ("creditor"), 101(14) ("disinterested

person"), 101(31) ("insider"), 101(41) ("person") & 101(45) ("relative").

The trip report from that trek reveals that counsel's only arguable link to the definition is its prior representation of the creditors' committee. While a creditors' committee is not mentioned in the definitions, and notwithstanding that the representation of a creditors' committee does not entail representation of any specific creditor, the analysis of the status of "creditor" in the context of the "disinterested" requirement is instructive.

It is black-letter law that a "creditor" is not "disinterested." 11 U.S.C. § 101(14)(A).

Yet, § 327(c) makes clear that an attorney's representation of a creditor does not per se deprive that attorney of "disinterested" status, but rather becomes a potential disqualifier for employment to represent the trustee on the conceptually distinct theory of "actual conflict of interest." 11 U.S.C. § 327(c).

If an attorney may be "disinterested" despite representing a creditor, it follows that the Felderstein Fitzgerald firm's prior representation of the creditors' committee does not render the firm per se ineligible for employment as not "disinterested."

### B

The next question is whether the proposed counsel holds or represents an "interest adverse to the estate." The requirement that prospective counsel not "hold or represent an interest adverse to the estate" is prescribed by § 327(a) and, redundantly, as an element of the definition of "disinterested" at § 101(14)(C). Moreover, representing or holding at any time during the case an "interest adverse to the interest of the estate with respect to the matter on which such professional person is employed" constitutes a basis to deny all compensation. 11 U.S.C. § 328(c).

■ The prohibition of representing or holding an "interest adverse to the estate" is a facet of the policy of ensuring that all professionals appointed pursuant to § 327(a) tender undivided loyalty to the estate and provide untainted advice and assistance in performance of their duties. *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir.1994); *Tevis*, 347 B.R. at 687.

■ To *hold* an interest adverse to the estate is either (1) to possess or assert an economic interest that would tend to decrease the value of the estate or create an actual or potential dispute with the estate or (2) to possess a predisposition that would amount to a bias against the estate. *Tevis*, 347 B.R. at 688 (collecting cases).

■ To *represent* an adverse interest is to serve as an attorney for an entity holding such an interest. *Tevis*, 347 B.R. at 688.

■ What constitutes "adversity" is not defined in the Bankruptcy Code and, although arguably a federal question, is informed by reference to the ethical rules of the legal profession governing adversity in a manner that is analogous to the imposition of attorney discipline by federal courts, which do not have the benefit of uniform federal procedure.

Federal trial courts normally apply ethical rules of the state in which the court is located. *See Price v. Lehtinen (In re Lehtinen)*, 564 F.3d 1052, 1062 (9th Cir. 2009); *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1198 (9th Cir.1999); *Tevis*, 347 B.R. at 679.

By local rule, the Eastern District of California has adopted the Rules of Professional Conduct of the State Bar of California as the standards of professional conduct in the district and bankruptcy courts.

Local Rule 83–180(e), E.D. Cal., *incorporated by* Local Bankr.Rule 1001–1(c), E.D. Cal.

The relevant California Rules of Professional Conduct regarding overlapping employment provide:

(C) A member shall not, without the informed written consent of each client:

(1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or

(2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or

(3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

. . .

(E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

CAL. RULES OF PROF'L CONDUCT R. 3–310(C) & (E); *accord,* MODEL RULES OF PROF'L CONDUCT R. 1.7.

In each instance, informed written consent is virtually essential to permitting representation in such circumstances.

 The concerns are to assure both undivided loyalty and confidentiality. Where an attorney is torn by conflicting loyalties, there is a danger of inadequate representation that threatens the interests of all parties to the bankruptcy case and compromises the ability of the court to render justice. *Tevis,* 347 B.R. at 689. Likewise, preserving confidentiality is a cornerstone of legal ethics. *San Francisco v. Cobra Solutions, Inc.,* 38 Cal.4th 839, 43 Cal.Rptr.3d 771, 135 P.3d 20, 24 (2006); *People ex rel Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.,* 20 Cal.4th 1135, 86 Cal.Rptr.2d 816, 980 P.2d 371, 378 (1999) (*"SpeeDee"*). As the California Supreme Court has put it, the "paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *SpeeDee,* 86 Cal.Rptr.2d 816, 980 P.2d at 378.

 When the representation of multiple clients is concurrent, the duties of loyalty and confidentiality combine to make it very difficult to overcome the "hold" or "represent" disqualification imposed by §§ 101(14)(C), 327(a), and 327(c).

 Concurrent representation in California, without informed consent, carries with it a strong presumption of disqualification "regardless of whether the simultaneous representations have anything in common or present any risk that confidences obtained in one matter would be used in the other." *SpeeDee,* 86 Cal. Rptr.2d 816, 980 P.2d at 379; *accord, Tevis,* 347 B.R. at 691.

 Successive representation, in contrast, is subject to a substantial relationship test. The dominant concern is the "enduring duty to preserve client confidences" regarding information imparted to counsel during the prior representation. If an attorney undertakes to represent an adversary without obtaining informed written consent, the former client may disqualify the attorney by demonstrating a "substantial relationship" between the subjects of the prior and subsequent representations. *Cobra Solutions, Inc.,* 43 Cal. Rptr.3d 771, 135 P.3d at 25. The requisite substantial relationship exists if the subjects of the representations make it likely that the attorney, who did not obtain the

informed written consent of the former client, acquired confidential information that is relevant and material to the subsequent representation. *Id.*

The withdrawal by the counsel for the committee of unsecured creditors to be followed by representation of the chapter 11 trustee is an instance of successive representation.

Informed written consent is the standard solution to the problem under California law. Here, the committee, informed with the advice of its replacement counsel, gave its written consent for the Felderstein Fitzgerald firm to shift to representing the chapter 11 trustee. This constituted the informed written consent required to satisfy California's ethical requirements.

While informed written consent ordinarily suffices in private litigation, the Bankruptcy Code adds an additional dimension by opening the opportunity for any party in interest to raise the question of whether the firm holds or represents an interest adverse to the estate.

■ In other words, informed written consent is a necessary, but not sufficient, precondition to a § 327(a) employment that entails concurrent or successive representation. By virtue of § 327(a), what is otherwise a matter between counsel and client becomes a collective public affair involving the entire body of interests in the case under title 11.

■ As a matter of procedure, an application for an order of employment under § 327(a), accompanied by the requisite full, candid, and complete disclosure, need only be filed and transmitted to the United States trustee. FED. R. BANKR.P. 2014(a). The court, however, has discretion to require full notice to all parties in interest and an actual hearing.

■ When, as here, an issue of informed consent (or "waiver of conflict") in connection with a concurrent or successive representation arises with respect to a § 327(a) employment, prudence dictates full notice and actual hearing.

The hearing following full notice established that no creditor objected to the switch of the Felderstein Fitzgerald firm from representing the committee to representing the chapter 11 trustee. Indeed, the creditors and principals of the debtors supported the employment.

## C

■ The United States trustee did, more as a formal matter than out of genuine opposition, object. The effect of that objection was to trigger the § 327(c) requirement that the court specifically scrutinize the question of conflict of interest:

(c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c).

In proceeding with this analysis, the court is mindful that representing an official committee of creditors is not, strictly speaking, "employment by or representation of a creditor"; nevertheless the spirit of the statute—and spirit counts for much in a context in which appearances are important—contemplates the review in order to assure the paramount requirement that the court act so as to assure public confidence in the integrity of the judicial process.

The salient point about the relationship of the committee of unsecured creditors and the chapter 11 trustee is that their interests fundamentally coincide in a fashion that does not present a conflict of interest. *Stoumbos v. Kilimnik,* 988 F.2d 949, 964–65 (9th Cir.1993). Since liabilities appear to exceed the value of assets, the unsecured creditors are the persons at the margin who stand to gain and lose the most by the fate of the cases. Both have the same incentives to maximize the value of the estates by marshaling all available property and to defeat every imperfectly perfected lien and security interest that could otherwise diminish the value of the estates. The structural potential for conflict is negligible.

Nor are the type of confidential communications that may have occurred between the committee and its counsel at this early stage of the chapter 11 case likely to lead to adversity.

The prospect of the trustee objecting to a particular unsecured claim ought not to present a conflicts issue because committee counsel represents the committee, but does not represent individual unsecured creditors. In any event, as an additional protection against the possibility of a conflict, it has been agreed that any action that the trustee takes against the creditors' committee or its members will be taken by separate conflicts counsel to be employed if and when the need arises.

In short, the representation of the chapter 11 trustee by the Felderstein Fitzgerald firm presents no conflict of interest within the meaning of § 327(c). Hence, the firm is not precluded as a matter of law from representing the chapter 11 trustee.

### III

■ Having concluded that the proposed employment is permissible as a matter of law, the question becomes whether any prudential reason counsels against the employment. In other words, although permissible as a matter of law, is there any factual reason why it should not be approved? The answer is no.

There is no hint of any factor in the background of this case that would raise an appearance of impropriety. Nor does a potential for conflict of interest suggest itself.

To the contrary, the employment appears to be an efficient solution to a perplexing problem. The stringent requirements of § 327(a) operate as a limit on concentration of the legal profession in bankruptcy generally and especially in the reorganization sector of the bankruptcy practice. These cases have so many financial institution creditors that most firms with the requisite expertise in matters of commerce and finance at the scale required will have conflicts that would be difficult to overcome. The economics of the cases are singularly unattractive for counsel because payment might end up depending upon the uncertainty of cash collateral "carve-outs" permitted by secured creditors. The consequence is that the cases have become dead in the water for want of counsel for the trustee.

Employing the counsel for the unsecured creditors' committee utilizes the skills of an able reorganization firm that has been involved in the case from nearly the outset, that has essentially the same point of view as the trustee by virtue of the alignment of interests in these cases as between the trustee and the committee, and that will not incur inefficiencies associated with any new counsel's "learning curve."

\* \* \*

For the foregoing reasons, and perceiving neither actual nor potential conflict of

interest, the United States trustee's objection to the employment of the Felderstein Fitzgerald firm as counsel for the chapter 11 trustee following its withdrawal from representing the official committee of unsecured creditors is OVERRULED, without prejudice to revisiting the issue by way of § 328(c). The chapter 11 trustee's motion to employ is GRANTED.