NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   EC-12-1648-KiPaJu |
| RAJ KAMAL CORPORATION, | Bk. No.   11-36184 |
| Debtor. | |
| RAJ KAMAL CORPORATION;<br>C. ANTHONY HUGHES, | |
| Appellants, | |
| v. | **M E M O R A N D U M**[1] |
| ALAN S. FUKUSHIMA, Chapter 7<br>Trustee; UNITED STATES<br>TRUSTEE, | |
| Appellees. | |

Argued and Submitted on October 18, 2013,
at Sacramento, California

Filed - December 17, 2013

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Robert S. Bardwil, Bankruptcy Judge, Presiding

Appearances:    Appellant C. Anthony Hughes, Esq. argued for
himself; Appellees did not appear.[2]

Before: KIRSCHER, PAPPAS and JURY, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2] On April 17, 2013, the Clerk entered a Conditional Order of Waiver directing that the appellees' brief be filed by May 1, 2013. Appellees did not file a brief. Accordingly, they waived their right to file a brief and appear at oral argument.

Attorney C. Anthony Hughes ("Hughes") appeals the bankruptcy court's order denying compensation for services rendered and requiring disgorgement of all funds Hughes received in connection with the debtor's case. We AFFIRM.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Raj Kamal Corporation ("RJC") filed a chapter 11 bankruptcy case on June 30, 2011.[3] The case was later converted to chapter 7. While in chapter 11, RJC filed an application to employ Hughes as counsel on August 3, 2011. In his supporting declaration, Hughes stated that he was a disinterested person in accordance with § 101(14).[4] Neither the application nor Hughes's declaration contained disclosure required by Rule 2014 regarding his connections to the respective attorneys or accountants for the debtor, creditors, or any other party in interest. The bankruptcy court approved the application to employ Hughes on August 15, 2011.

In conjunction with Hughes's application, RJC filed an application to employ Donald Smith ("Smith") as its accountant. RJC required Smith's services "to prepare tax returns, monthly

---

[3] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[4] The term "disinterested person" means a person that — (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. Section 101(14).

-2-

operating reports, the disclosure statement, and to assist with other business accounting as needed." In the application, RJC represented that Smith had no prior connections to the debtor or its respective attorneys. However, in his supporting declaration, Smith made no similar disclosures. The bankruptcy court approved the application to employ Smith on August 15, 2011.

In the interim, Hughes filed several motions and stipulations for the use of cash collateral to pay certain creditors as well as a proposed chapter 11 plan.

On June 21, 2012, Smith filed his first and final application for compensation for his accounting services during the chapter 11 case.[5] The bankruptcy court continued the hearing on Smith's fee application after independently learning of two other cases in which both Hughes and Smith were employed by debtors in their professional capacity.[6] In response to the bankruptcy court's tentative ruling on July 25, 2012, Smith filed a supplemental declaration on August 3, 2012, attempting to withdraw his fee application after learning from the trustee it was unlikely funds would be available to meet his request. On August 15, 2012, the bankruptcy court did not treat Smith's fee application as withdrawn but, instead, again continued the fee application

---

[5] Hughes did not include a number of documents in his excerpts of record relevant to this appeal. We therefore exercised our discretion to review independently these imaged documents from the bankruptcy court's electronic docket. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[6] The cases noted by the bankruptcy court at that time were In re Sundance Self Storage El Dorado LP (case no. 10-36676) and In re W. Coast Real Estate & Mortg. Inc. (case no. 12-30686).

-3-

hearing and requested that Smith file a declaration "setting forth the nature and extent of any and all past and current connections" with Hughes. Smith filed the required supplemental declaration on August 24, 2012, in which he disclosed that Hughes was his bankruptcy attorney in 2010 in his personal chapter 13 case (case no. 10-38537). Smith also disclosed two additional instances, previously unknown to the bankruptcy court, in which he and Hughes had both been employed by the same debtor. The bankruptcy court approved Smith's first and final application for compensation on September 27, 2012.

Hughes initially filed an application for compensation in the RJC case on July 3, 2012. It was denied for procedural reasons on July 25, 2012. On August 3, 2012, Hughes submitted another application for compensation, which he later amended on August 28, 2012. The bankruptcy court denied that application on September 12, 2012, again for procedural reasons. On October 24, 2012, Hughes submitted the instant application for compensation (the "Final Fee Application"), requesting attorney's fees of $29,450 and expenses of $110.17.

On November 6, 2012, in another case where Hughes was debtor's counsel, In re Sundance Self Storage-El Dorado LP, 482 B.R. 613 (Bankr. E.D. Cal. 2012)(the "Sundance case"), the same bankruptcy court denied Hughes's fee application because of his failure to disclose his connections with Smith. Prior to this ruling, the bankruptcy court had held a hearing on August 29, 2012, during which the court informed Hughes that it had learned of his representation of Smith in Smith's chapter 13 case. During that hearing, the court stressed to Hughes the importance for

-4-

employed professionals to make full disclosure to the bankruptcy court.

Two months after the August 29 hearing in the <u>Sundance</u> case, Hughes filed the Final Fee Application on October 24, 2012. On October 30, 2012, Hughes filed an "amended prayer" to the Final Fee Application, stating that he was not requesting payment in excess of funds available from the trustee. Notably, he did not disclose any prior or ongoing relationship with Smith.

On November 9, 2012, after the bankruptcy court denied Hughes's fee application in the <u>Sundance</u> case for failure to make proper disclosures under Rule 2014, Hughes filed a motion to continue the hearing on the Final Fee Application, which the bankruptcy court granted. In the interim, Hughes filed no additional documents related to the Final Fee Application.

A hearing on the Final Fee Application was held on December 12, 2012, at which no appearances were made. The court denied the Final Fee Application and ordered Hughes to disgorge to the chapter 7 trustee all compensation he had received, including a retainer of $10,736. In its related minute order, the bankruptcy court explained that it denied the Final Fee Application for two reasons: (1) because Hughes had failed to provide sufficient disclosure of the nature, extent, and value of the professional services provided by Hughes's legal assistants; and (2) because Hughes had failed to disclose the nature and extent of his connections with Smith as required by Rule 2014. This timely appeal followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334

-5-

and 157(b)(2)(A).  We have jurisdiction under 28 U.S.C. § 158(b).

## III. ISSUE

Did the bankruptcy court abuse its discretion when it denied the Final Fee Application and ordered disgorgement?

## IV. STANDARDS OF REVIEW

We review the bankruptcy court's award or denial of attorney's fees for an abuse of discretion.  Feder v. Lazar (In re Lazar), 83 F.3d 306, 308 (9th Cir. 1996).  A bankruptcy court's disgorgement order directed to a debtor's attorney is reviewed for abuse of discretion.  Hale v. U.S. Tr. (In re Byrne), 208 B.R. 926, 930 (9th Cir. BAP 1997), aff'd, 152 F.3d 924 (9th Cir. 1998).  A bankruptcy court abuses its discretion if it applies the wrong legal standard or its factual findings are illogical, implausible or without support in the record.  TrafficSchool.com v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## V. DISCUSSION

Hughes contends that the bankruptcy court applied the wrong legal standard by failing to consider attorney-client privilege and privacy rights under California law in requiring disclosure of his relationship to Smith.  Further, Hughes argues the court erred in determining that he was not a disinterested person under § 101(14).  Finally, Hughes argues the bankruptcy court erred by denying all requested fees and costs and requiring disgorgement of any funds received.

**A.  The bankruptcy court was not required to consider attorney-client privilege and California privacy laws regarding the Final Fee Application.**

Hughes argues that the bankruptcy court did not conduct any

-6-

inquiry into whether the attorney-client privilege or California privacy laws precluded Hughes from disclosing his relationship with Smith. Hughes further argues that the holder of the privilege under California law is the client and not the attorney, and Smith never waived that privilege.

We fail to see where Hughes raised this argument before the bankruptcy court. Generally, the Panel cannot consider arguments that were not raised or briefed before the bankruptcy court. <u>Katz v. Pike (In re Pike)</u>, 243 B.R. 66, 69 (9th Cir. BAP 1999)(citing <u>Whittaker Corp. V. Execuair Corp.</u>, 953 F.2d 510, 515 (9th Cir. 1992)). However, we have the discretion to consider an argument raised for the first time on appeal if the "issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." <u>Id</u>. (quoting <u>Boker v. C.I.R.</u>, 760 F.2d 1039, 1042 (9th Cir. 1985)). Because the issue Hughes presents is such a matter, we exercise our discretion to consider it.

Privileges in California are created and governed by statute. <u>See</u> CAL. EVID. CODE §§ 950-962. In California, the attorney-client privilege applies to communications between client and counsel that are presumed to have been made in confidence and are broadly protected against discovery. Confidential communication includes "a legal opinion formed and the advice given by the lawyer in the course of that [attorney-client] relationship." CAL. EVID. CODE § 952. The privilege applies not only to communications made in anticipation of litigation but also to legal advice when no litigation is threatened. The client holds the privilege in accordance with the Evidence Code. <u>See</u> CAL. EVID. CODE § 954.

-7-

Hughes has not cited, and we could not locate, any relevant authority supporting his contention that the attorney-client privilege or California privacy laws "trump" the disclosures required by estate professionals under § 327 and Rule 2014.  In any event, we are not persuaded that either the attorney-client privilege or California privacy laws are a means of excusing disclosure under § 327 and Rule 2014.

Bankruptcy petitions are public documents and not subject to the attorney-client privilege.  See William E. Schrambling Accountancy Corp. v. United States, 937 F.2d 1485, 1489 (9th Cir. 1991)(holding that information contained in Notice of Federal Tax Lien and bankruptcy petition was no longer confidential so disclosure did not violate I.R.C. § 6103).  The filing of a bankruptcy petition, which is a matter of public record, does not qualify as a "confidential communication" to which the attorney-client privilege would even apply.  Further, as a matter of public record, the information contained therein is no longer private.

Even if Hughes were correct and the attorney-client privilege or California privacy laws were applicable to fee applications, both were waived by Smith — first when he filed his chapter 13 petition on July 28, 2010, disclosing Hughes as his attorney, and again when he filed his supplemental declaration in support of his first and final fee application on August 24, 2012, which disclosed his relationship with Hughes.  As a result, Hughes was free to disclose his relationship with Smith in his Final Fee Application filed on October 24, 2012.  Therefore, we see no basis for why he could not do so.

**B. The bankruptcy court based its decision not on Hughes's disinterested status, but on his failure to disclose the nature and extent of his connections with Smith.**

Hughes argues that the bankruptcy court improperly determined that he was not a "disinterested" person as defined in § 101(14) in deciding to deny his Final Fee Application.[7] Hughes contends that any prior representation of, or relationship with, Smith had no relation to Hughes's employment in this case. Therefore, Hughes believes he had no connection to Smith that required disclosure. Unfortunately for Hughes, this case is not about his disinterested status as to RJC, but rather his failure to comply with the disclosure requirements of Rule 2014.

Rule 2014(a) establishes the procedure for the employment of attorneys and other professionals. It requires the professional to file an application disclosing, "to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Rule 2014(a). "This rule assists the court in ensuring that the attorney has no conflicts of interest and is disinterested, as required by 11 U.S.C. § 327(a)." Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.), 63 F.3d 877, 881 (9th Cir. 1995).

The disclosure requirements of Rule 2014 are strictly applied. Id. "[T]he [professional] has the duty to disclose all

---

[7] Hughes's brief is unclear with respect to whether he is arguing that the bankruptcy court improperly determined that he or Smith was not disinterested. Because Hughes has no standing to raise an argument for Smith, and Smith's fees were approved, we only reviewed the issue as to Hughes.

-9-

relevant information to the court, and may not exercise any discretion to withhold information." Kun v. Mansdorf (In re Woodcraft Studios, Inc.), 464 B.R. 1, 8 (N.D. Cal. 2011)(citing In re Park-Helena, 63 F.3d at 880, 882; In re Coastal Equities, Inc., 39 B.R. 304, 308 (Bankr. S.D. Cal. 1984)("It is the duty of the attorney to reveal all connections.")(citing In re Haldeman Pipe & Supply Co., 417 F.2d 1302, 1304 (9th Cir. 1969); In re Arlan's Dep't Stores, Inc., 615 F.2d 925, 932 (2d Cir. 1979)); In re Plaza Hotel Corp., 111 B.R. 882, 883 (Bankr. E.D. Cal. 1990)("The duty is one of complete disclosure of all facts."), aff'd, 123 B.R. 466 (9th Cir. BAP 1990)).

> The duty of professionals is to disclose all connections with the debtor, debtor-in-possession, insiders, creditors, and parties in interest. . . . They cannot pick and choose which connections are irrelevant or trivial. . . . No matter how old the connection, no matter how trivial it appears, the professional seeking employment must disclose it.

In re Park-Helena Corp., 63 F.3d at 882 (quoting In re EWC, Inc., 138 B.R. 276, 280-81)(Bankr. W.D. Okla. 1992)(other citations omitted). "The duty to disclose is a continuing obligation as to which the risk of defective disclosure always lies with the discloser." In re Kobra Props., 406 B.R. 396, 402 (Bankr. E.D. Cal. 2009)(citing In re Park-Helena Corp., 63 F.3d at 880-81; cf Official Comm. of Unsecured Creditors v. Michelson (In re Michelson), 141 B.R. 715, 719-20 (Bankr. E.D. Cal. 1992)).

Hughes clearly had a connection to Smith as his chapter 13 bankruptcy attorney, as well as through Smith's employment as an accountant for RJC and other debtors for which Hughes was counsel. Hughes particularly knew disclosure was of great importance to the bankruptcy court when he filed his Final Fee Application based on

-10-

the court's previous admonishment for his failure to disclose his connections to Smith at the August 29, 2012 hearing in the <u>Sundance</u> case. Hughes was further aware of the necessity of disclosure under Rule 2014 when his fee application in the <u>Sundance</u> case was denied on November 9, 2012, which was one month before the hearing on the Final Fee Application.

Hughes's failure to disclose his connections to Smith did not allow the bankruptcy court to ensure that no conflicts of interest existed. Despite the ongoing duty to disclose and the bankruptcy court's previous denial of fees in the <u>Sundance</u> case for the same violation, Hughes still failed to disclose his connections with Smith to the bankruptcy court. Even after his initial failure to disclose the nature and extent of his relationship to Smith in his employment application, the better course of action for Hughes would have been to file an amended declaration in support of his Final Fee Application disclosing his connections with Smith.

**C.** **The bankruptcy court did not abuse its discretion when it denied the Final Fee Application and ordered disgorgement.**

Hughes contends that to deny all fees and expenses and to require disgorgement of any funds received by him is too harsh a result. Specifically, he contends that a balancing test should be applied where the penalty for a disclosure failure is in proportion to the gravity of the breach. Again, we fail to see where Hughes raised this argument before the bankruptcy court. In any event, what Hughes asserts is not the law of this circuit.

"Disclosure that later turns out to be incomplete can be remedied by denial of fees." <u>In re Kobra Props.</u>, 406 B.R. at 402 (citing <u>In re Park-Helena Corp.</u>, 63 F.3d at 880-81). "Even a

-11-

negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees." In re Park-Helena Corp., 63 F.3d at 882 (citations omitted).

Although Hughes acknowledged at oral argument that negligent or inadvertent disclosure may result in denial of all compensation, he contends that when the nondisclosure was not intentional, some fees should be allowed based on benefit to the estate. While Hughes's argument is not completely without logic, we are bound by Ninth Circuit law and are unable to entertain it. See Barnes-Wallace v. City of San Diego, 704 F.3d 1067, 1077 (9th Cir. 2012)(we are bound by the law of the Ninth Circuit).

Even if we could entertain Hughes's argument, however, it would not help him in this case. As a bankruptcy attorney, Hughes is aware of the requirements of Rule 2014. Further, Hughes was on notice of the bankruptcy court's need for disclosure regarding his relationship with Smith based on its prior admonishment in the Sundance case, and when Smith was ordered to file a supplemental declaration in support of his fee application on August 15, 2012, "setting forth the nature and extent of any and all past and current connections" with Hughes. Yet, despite this, Hughes never submitted a supplemental declaration in support of his Final Fee Application making the proper disclosures.

Accordingly, while it may be a harsh result that we as individual bankruptcy judges might have determined differently, the bankruptcy court was within its discretion in denying the Final Fee Application and ordering disgorgement of all fees

-12-

received.[8]

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.

---

[8] We are also unable to grant Hughes's request at oral argument to award him at least RJC's filing fee, which he paid. Based on our review of the record, he never asked the bankruptcy court for this relief, although he may still be able to do so. Further, as an appellate court, we cannot play the role of "fact finder" and parse out those amounts of his requested fees and/or expenses we think may be awardable.

-13-